IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-118-M-BM

| | | |
|---|---|---|
| MARQUITA FINCH,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM AND RECOMMENDATION** |

Plaintiff Marquita Finch ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). This matter is before the court on Plaintiff's brief [DE-14] ("Pl.'s Brief") seeking judgment in her favor, Defendant's responsive brief [DE-16] ("Def.'s Brief") in opposition, and Plaintiff's reply brief [DE-17] ("Pl.'s Reply"). The parties have fully briefed this matter pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, it is recommended that Plaintiff's Brief [DE-14] be allowed, Defendant's Brief [DE-16] be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed applications for a period of disability, DIB, and SSI on August

19, 2021, alleging disability beginning July 14, 2021. Transcript of Proceedings ("Tr.") 77, 227-41. Her claim was denied initially. Tr. 77-98, 134-53. Plaintiff filed a request for reconsideration (Tr. 159-60), and was denied upon reconsideration on May 10, 2023 (Tr. 99-128, 161-76). On May 18, 2023, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). Tr. 177-78. A hearing before the ALJ was held on September 25, 2023, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. Tr. 40-76. On December 27, 2023, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 7-27.

On February 13, 2024, Plaintiff requested a review of the ALJ's decision by the Appeals Council. Tr. 223-24. On November 18, 2024, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting

evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and §§ 416.920a(b)-(c). This

regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(4), 416.920a(e)(4).

**IV. ALJ'S FINDINGS**

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 21-22. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since July 14, 2021, the alleged onset date. Tr. 12.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: migraine headaches; knee osteoarthritis; residuals of right partial knee replacement; hypertension; and obesity. Tr. 13. The ALJ also found Plaintiff had the following non-severe impairments: left ovarian cysts; gastroesophageal reflux disease; allergic rhinitis; and chronic idiopathic constipation. Tr. 13. At step three, however, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 13.

Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental impairments have resulted in no limitation in understanding, remembering, or applying information; mild limitation in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself. Tr. 14.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the

ability to perform light work[1] with the following limitations:

> [S]he can occasionally climb ramps and stairs; she can never climb ladders, ropes or scaffolds; she can occasionally kneel, crouch and crawl; she can have moderate levels of noise but no exposure to bright lights; she must avoid concentrated exposure to vibration, she can have no exposure to unprotected heights and she would be absent from work one day per month and off-task up to 10% of the workday due to migraine headaches.

Tr. 15.

In making this assessment, the ALJ found Plaintiff's statements about her limitations not entirely consistent with the medical evidence and other evidence in the record. Tr. 16. At step four, the ALJ concluded Plaintiff had the RFC to perform the requirements of her past relevant work as a retail sales clerk, as generally and actually performed. Tr. 19-21. Although the ALJ found that Plaintiff to be capable of performing past relevant work, the ALJ specifically made alternative findings for step five. The ALJ found in the alternative, upon considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can also perform. Tr. 20-21.

## V. DISCUSSION

Plaintiff alleges the ALJ erred by failing to explain the basis for the RFC conclusion that

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id.* A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

Plaintiff "'would be absent from work one day per month and off-task up to 10% of the workday due to migraine headaches,'" which resulted in an arbitrary conclusion absent further explanation and prevented substantial evidence from supporting the ALJ's decision. Pl.'s Brief [DE-14] at 1.[2] Specifically, Plaintiff contends the ALJ failed to build an "accurate and logical bridge" between the evidence and the ALJ's conclusion. *Id.* at 7.

The Commissioner maintains that the "ALJ sufficiently explained in the decision why substantial evidence . . . supported the limitations included in the RFC finding but, in turn, did not warrant greater restrictions." Def.'s Brief [DE-16] at 2 (citing Tr. 10- 22). Specifically, the Commissioner points to evidence consisting of "Plaintiff's limited and conservative migraine treatment history, her statements to medical providers that medications were effective in managing her migraine symptoms, her unremarkable diagnostic and physical examination findings, the medical opinions and prior administrative medical findings, and Plaintiff's ability to perform a range of daily activities, including working part-time as a cashier." *Id.*

In her reply, Plaintiff responds that the Commissioner "fails to rehabilitate the [ALJ's]" conclusion that Plaintiff "would be absent from work one day per month and off-task for up to 10% of the workday due to migraine headaches." Pl.'s Reply [DE-17] at 1.

At the administrative hearing before the ALJ, when asked about the health problems that prevent her working, Plaintiff first cited "standing and walking long periods." Tr. 52. She next mentioned that "a lot of times [she will] get migraines and [her] vertigo acts up at times." *Id.* With respect to the frequency of her migraines, Plaintiff testified "[e]very day [and s]ometimes it lasts up to three days." *Id.* Plaintiff also stated that she had migraines every day at the time she was

[2] Except for citations to the Transcript of Proceedings ("Tr."), all citations to documents using the docket entry number [DE-] provided in the court's docket will specify the page number automatically assigned by the CM/ECF system, rather than the page number, if any, specified in the original document.

working and that there has been no change since she stopped working. Tr. 53. When asked how she deals with migraines while working, Plaintiff responded that she is "just dealing with it the best [she] can to try to -- pushing through." *Id.* Plaintiff explained that when she gets migraines while working at her part-time job at Family Dollar, she will let her boss know and her boss will send her home. *Id.* Plaintiff alleged that her current part-time employer cut her schedule "down to like three days a week because of the migraines, because [she] was actually -- before the migraines, they had [Plaintiff] working more." *Id.* Plaintiff also claimed that she experienced migraines "three to four days a week" at her last full-time employer, the State of North Carolina, and that they have "gotten worse since then." Tr. 54. As a result of this Plaintiff claimed that she was missing a week or so a month of work during this period. Tr. 55. Plaintiff testified that she takes "medicine for her migraines and that even is supposed to help, but it doesn't always help." *Id.*

Yet Plaintiff also acknowledged that she experienced improvement in her migraines at some point. *Id.* Plaintiff denied having "any particular triggers for the migraines." *Id.* When asked about measures aside from medication that help her migraines, Plaintiff testified that she "tr[ies] to go outside [to a shaded area] and find a quiet area to like close [her] eyes and just do like breathing methods to kind of clear [her] mind or sometimes [she will] listen to music, but it's not real loud" and explained that "[s]ometimes that helps [and s]ometimes it doesn't." Tr. 55-56. When asked about how often she gets sent home from Family Dollar due to migraines and problems with her knees, Plaintiff responded "[a]t least twice a week." Tr. 57.

At the administrative hearing, the VE testified that if an individual were absent from "two days or more a month and particularly if it becomes a chronic and persistent problem, at two days or more a month that'd be work preclusive." Tr. 74. The VE also stated that 15% or more time

off-task was work-preclusive. *Id.*

In her decision, the ALJ found that Plaintiff had severe impairment of "migraine headaches." Tr. 13. The ALJ found that Plaintiff's migraines did not satisfy the requirements of Listing 12.02 because they "are not associated with loss or alteration of consciousness of the frequency or severity contemplated by the Listing." Tr. 14.

The ALJ summarized Plaintiff's testimony by noting that Plaintiff "described performing light household chores or resting while at home"; "endorsed having frequent migraine headaches that lasted up to three days" and "advised that she missed a week out of a month of work due to her headaches." Tr. 15. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 16.

With respect to the relevant medical evidence, the ALJ notes "[t]he medical evidence shows the claimant has a history of treatment for migraine headaches and hypertension." *Id.* Yet the ALJ noted that "[Plaintiff] admitted to 'drastically improved' headaches with medication by June 2021, and that "[Plaintiff] also reported severe headaches in July 2021. *Id.* The ALJ considered that "[a] CT scan of her head revealed benign findings." *Id.* The ALJ noted a second time that Plaintiff "described improvement in headaches with medication." *Id.* The ALJ further considered that "[i]n May 2022, [Plaintiff] returned to the emergency room due to headaches as well as neck and back pain" but "[i]maging of her head remained unremarkable." *Id.* At this appointment, Plaintiff was diagnosed with "migraine headaches and hypertension." *Id.* The ALJ provides that "[a]nother May 2022 appointment note reflected [Plaintiff's] reports of headaches occurring three times per

week with photophobia and phono[ph]obia." *Id.* The records include that Plaintiff "received medication for migraines at that time." *Id.*

The ALJ noted that "[i]n May 2022, [Plaintiff] presented to Leslie Dupree, FNP, for a physical consultative examination reporting worsening headaches that lasted up to 36 hours at a time and chronic right lower extremity pain." *Id.* Yet the ALJ noted that "[Plaintiff] also appeared in no acute distress, sat comfortably during the exam, walked with a steady gait and rose from a seated position without assistance." *Id.* Ms. Dupree allegedly assessed Plaintiff with "moderate limitations with prolonged standing and walking and mild limitations with lifting, carrying, manipulative tasks and postural tasks as well as no limitations with prolonged sitting" but no limitations related to Plaintiff's migraine allegations. *Id.*

The ALJ found "[Plaintiff's] migraine headaches . . . do provide for limitations in her abilities as evidenced by the medical evidence of record and her testimony at the hearing" and the ALJ concluded "the record also shows that [Plaintiff's] conditions are not totally debilitating." Tr. 17.

When considering the persuasive value of various medical opinions, the ALJ notes in support of her findings on Plaintiff's functional limitations that Plaintiff "is able to perform her daily living activities, including doing household chores, driving her husband to work, and her daughter to school, and managing the family's finances[, and i]n addition, she works as a cashier, albeit part time due to her physical impairments." Tr. 18.

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)."

*Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)). Indeed, "the ALJ's logical explanation is just as important as the other two [components] . . . and our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas*, 916 F.3d at 311 (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). The ALJ is not required to discuss every piece of evidence in the record. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citations omitted). Yet where a court is "left to guess about how the ALJ arrived at his conclusions on [a claimant's] ability to perform relevant functions . . . , remand is necessary." *Mascio*, 780 F.3d at 637.

Plaintiff contends the ALJ erred by failing to explain the basis for the RFC conclusion that Plaintiff "would be absent from work one day per month and off-task up to 10% of the workday due to migraine headaches." Pl's Brief [DE-14] at 6. Plaintiff argues this conclusion is arbitrary, absent further explanation, preventing substantial evidence from supporting the ALJ's decision. *Id*. In support of this argument, Plaintiff cites to *Kennedy v. Berryhill*, 3:18-cv-00405-RJC, 2019 U.S. Dist. LEXIS 131049 at *12 (W.D.N.C. Aug. 06, 2019) and *Richardson v. Saul*, 4:19-CV-00128-FL, 2020 U.S. Dist. LEXIS 120798 at *16 (E.D.N.C. Jun. 9, 2020), *adopted by* 4:19-CV-00128-FL, 2020 U.S. Dist. LEXIS 118812 (E.D.N.C. Jul. 07, 2020) as examples of cases where the ALJ failed to sufficiently explain the basis for the time off task limitation chosen by the ALJ.

In each of those cases, the court found an absence of relevant explanation or logical bridge as to why the ALJs selected the functional limitations that they did. For example, the court in *Kennedy* found that "[n]owhere in the rest of the ALJ's discussion of Plaintiff's RFC—indeed, nowhere in the entire ALJ decision—d[id] he identify or explain his reasoning as to why Plaintiff's stress translate[d] into her being off task nine percent of the time." *Kennedy*, 2019 U.S. Dist.

LEXIS 131049, *10. Similarly, this court in *Richardson* found that the ALJ's explanation that the claimant "would be off-task due to pain and medication side effects . . . explains why she would be off-task, [but] it does nothing to inform a reviewing court of how ALJ Anderson arrived at the figure—nine percent of the workday—or what evidence in the record supports this calculation." *Richardson*, No. 4:19-CV-00128-FL, 2020 U.S. Dist. LEXIS 120798, at *16 (E.D.N.C. June 9, 2020) (collecting cases).

The Commissioner argues that the "ALJ's discussion of the totality of the evidence was more than sufficient to support her factfinding about Plaintiff's limitations." Def's Brief [DE-16] at 13. In support of this argument, the Commissioner cites various cases which support the general proposition that there is no per se requirement that the ALJ articulate a specific formula or equation as to how they arrived at a certain numerical limitation, so long as there is sufficient evidence supporting the explanation. *See* Def's Brief [DE-16] at 13-14. (first citing *Rebecca J. v. Kijakazi,* No. 22-1531, 2023 WL 3970022, at *4 (4th Cir. June 13, 2023); then citing *Ward v. Saul*, No. 1:19-CV-1239, 2021 WL 354160 (M.D.N.C. Feb. 2, 2021), *adopted*, 2021 WL 11431787 (M.D.N.C. Feb. 17, 2021) (Biggs, J.); then citing *Christopher S.S. v. O'Malley*, No 1:23-cv-341-JLW, ECF No. 13 (M.D.N.C. June 24, 2024); then citing *Link v. Saul*, No. 1:19-CV-662, 2020 WL 5044038, at *9 (M.D.N.C. Aug. 26, 2020), *adopted, slip op.*, (M.D.N.C. Sept. 10, 2020); then citing *Welch v. Saul,* No. 1:19-CV-189-DCK, 2020 WL 4586882, at *8 (W.D.N.C. Aug. 10, 2020), then citing *Crystal C. v. O'Malley*, No. CV 6:23-3821-BHH, 2024 WL 4343710, at *4 (D.S.C. Sept 30., 2024)). Yet none of these cases remove the requirement that the "ALJ must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted). For example, in *Rebecca J. v. Kijakazi*, although the ALJ's off-task

limitation of 7% lacked direct explanation, it was approved because the ALJ "exhaustively considered the objective medical evidence" and "built an accurate and logical bridge from the evidence he recounted to his conclusion." *See* No. 22-1531, 2023 WL 3970022, at *3-4 (4th Cir. June 13, 2023) (unpublished).

While the undersigned agrees that a specific formula or equation is not necessary to support a time-off task limitation, the ALJ's decision is deficient here in that there is no explanation regarding why a time-off task limitation appropriately accommodates Plaintiff's migraine limitations. As noted above, in assessing Plaintiff's RFC, the ALJ considered Plaintiff's subjective symptoms that she "endorsed having frequent migraine headaches that lasted up to three days" and "missed a week out of a month of work due to her headaches." Tr. 15. The ALJ found that Plaintiff admitted to "drastic[] improv[ement]" once beginning medication in June of 2021. Tr. 16. If the medical documentation of Plaintiff's headaches ended with this finding, it would explain why the ALJ thought it appropriate to discount Plaintiff's subjective statements regarding the absenteeism and time-off task associated with her migraine headaches. Yet the ALJ goes on to note Plaintiff's report of "severe headaches" the very next month in July of 2021, as well as an emergency room visit in May 2022 for headaches, neck and back pain. Tr. 16. The ALJ also noted additional records from May 2022 documenting Plaintiff's reports of her headaches occurring "three times per week with photophobia and phono[ph]obia." *Id.* Nowhere does the ALJ explain how these continued reports of severe headache symptoms are accommodated by allowing Plaintiff to be off-task 10% of the workday. There is no indication from the ALJ's decision why this limitation would accommodate Plaintiff's headache symptoms or what Plaintiff could do during this time-off task that would allow her to manage her headache symptoms for the rest of the workday.

Moreover, the undersigned does not find this lack of explanation harmless. The VE

testified that one day a month of absenteeism is typical and customary while two days or more a month would be work preclusive. Tr. 73-74. The VE further explained that up to 14% off-task is typical and customary, while 15% or more in competitive employment would be work preclusive. Tr. 74. To the extent that additional review of the record reveals that additional time off-task or absenteeism would be appropriate, it could be work-preclusive.

Accordingly, the undersigned finds that remand is necessary on this issue.

## VI. CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's Brief [DE-14] be ALLOWED, Defendant's Brief [DE-16] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 18, 2026**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by the **earlier of 7 days from the filing of the objections or September 22, 2026**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding**

**district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 11th day of September, 2026.

Brian S. Meyers
United States Magistrate Judge